466 A.2d 1075

**Nancy D.L. BRENCKLE**

**v.**

**Nancy J. ARBLASTER and Lawrence C. Arblaster, her husband; Arnetta M. Andrews and Norman Andrews, her husband; Loretta Hutchins and Richard Hutchins, her husband; Arnetta M. Andrews and Nancy J. Arblaster, Executrices under the Last Will and Testament of Lawrence E. Brenckle, Deceased.**

**Appeal of Arnetta ANDREWS and Loretta Hutchins.**

**In re ESTATE OF Lawrence E. BRENCKLE.**

**Appeal of Arnetta ANDREWS and Loretta Hutchins.**

Superior Court of Pennsylvania.

Argued April 27, 1983.

Filed Oct. 7, 1983.

Petition for Allowance of Appeal Denied Feb. 7, 1984.

90

Charles F. Gilchrest, Sharon, for appellants.

David Goodwin, Sharon, for Nancy D.L. Brenckle, appellee (at No. 715) and participating party (at No. 716).

David W. Ketler, Grove City, no appearance enter nor brief submitted on behalf of Nancy Arblaster, appellee (at No. 715) and participating party (at No. 716).

Milford L. McBride, Jr., Grove City, for Barbour, participating parties.

Richard Alan Peterson, Greenville, for Strout Realty, participating party.

Before ROWLEY, POPOVICH and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellants contend that the lower court erred in denying their request for a jury trial in declaratory judgment proceedings used to resolve an estate dispute, and in imposing sanctions of counsel fees, costs, and punitive damages against their respective shares of the estate. These contentions lack merit. Accordingly, we affirm.

The testator executed a will on October 12, 1972 naming his three daughters—appellants Arnetta Andrews and Loretta Hutchins and appellee Nancy Arblaster—as co-executrices and leaving his probate estate to be divided equally among them. In 1977, he married appellee Nancy Brenckle

and subsequently executed deeds for his realty naming her as co-tenant by the entireties. He died on July 8, 1979, survived by Nancy Brenckle and the three daughters.

A few weeks later, Nancy Brenckle and the three daughters executed a "Family Agreement" to dispose of the estate. Nancy Brenckle complied with her obligations by preparing to move out of the testator's residence in anticipation of a flat sum cash payment, but the daughters could not agree upon the division of the realty. On August 31, 1979, the co-executrices advanced Nancy Brenckle part of her share to make a downpayment on a mobile home, but on September 4, Arnetta stopped payment on the check. Because of the continuing disagreement, Nancy Brenckle filed a complaint to quiet title to the estate on December 28, 1979.

The court then appointed Northwest Bank to administer the estate. After a pretrial conference on May 2, 1980, the court ordered the testator's residence and its 11-acre plot to be listed with Strout Realty for three months at $120,000. Although agreeing at the conference, appellants refused to sign the listing agreement. Upon appellants' motion, the court modified its order on June 23, 1980 to permit any party to purchase the property free of realtor's commission before its sale to an outsider, and to create an escrow against Nancy Brenckle's share of the estate. Appellants then signed, the property was listed, and three months passed with no bids. The lower court then permitted Strout to list the property at market value. Strout obtained a buyer, Haun, offering $98,500, but Haun was prevented from closing when appellants refused to sign the deed. Appellants alleged Haun, whom they knew had already obtained a mortgage commitment from his bank, was financially irresponsible. Strout then obtained another buyer, appellee Barbour, offering $85,000, but Barbour was prevented from closing when appellants refused to sign the deed, alleging that mineral rights were not properly conveyed. Appellants then offered $85,100, but the lower court found this offer in bad faith. The court then ordered,

and appellants agreed to and participated in, a sealed-bid procedure on November 26, 1980. Barbour, offering $91,-175, outbid appellants, and the court ordered the deed signed within fourteen days. Appellants refused, contrary to their attorney's advice, and then when Barbour withdrew his bid after the fourteen days, they petitioned to have the court honor their second-place bid. Nancy Brenckle filed a petition that appellants be held in contempt.

On January 15, 1981, the lower court issued a decree nisi awarding the realty to Barbour, but later recused before resolving exceptions. Meanwhile, Northwest Bank had filed its final accounting of the estate, and Nancy Brenckle petitioned for confirmation. The various parties and participants also filed cross-petitions for costs, fees, and sanctions. On May 3, 1981, Nancy Brenckle petitioned that all matters relating to the action be resolved by declaratory judgment. Appellants petitioned for a jury trial. After the recusal of one judge and the appointment of another, the lower court denied the request for a jury trial. Further petitions were filed, and a bench trial held on November 5–6, 1981. The court issued its decree nisi on March 3, 1982, and its final decree on March 7. The decree vacated the family agreement and all prior court orders and granted Nancy Brenckle the realty as surviving tenant by the entireties and a widow's share of the probate estate. It approved a stipulated agreement between Nancy Brenckle and the daughter Nancy Arblaster. Upon a finding of fact that appellants had engaged in "blatant, obviant, arbitrary, and vexatious conduct ... designed to frustrate ... a series of court orders," the court imposed sanctions against appellants, all chargeable to their respective shares of the estate. This appeal followed.

■■■ Appellants contend the lower court erred in denying their request for a jury trial. Specifically, they contend that the questions about the family agreement were contractual, and thus assumpsit matters, and that the petitions for costs and sanctions alleged tortious conduct, and thus were in trespass, so as to give rise to a right to a jury trial.

These contentions lack merit. The Pennsylvania Constitution provides, "trial by jury shall be *as heretofore,* and the right thereof shall remain inviolate." Article I, § 6 (emphasis added). Quiet title actions, however, are traditionally, and thus constitutionally, resolved "by a judge sitting without a jury." Pa.R.Civ.P. 1067; *White v. Young,* 409 Pa. 562, 186 A.2d 919 (1963). Similarly, review of an administrator's account for an estate is within equity jurisdiction, and thus for the court. *Schwab v. Miller,* 302 Pa. 507, 153 A. 731 (1931). Declaratory judgment procedures afford no independent rights to a jury trial other than those arising from the underlying action. 42 Pa.C.S.A. § 7539; Pa.R. Civ.P. 1602. Here the underlying quiet title and estate action did not require a jury trial. Although the family agreement was contractual, because it affected the real property its validity is a proper subject of the quiet title action. Pa.R.Civ.P. 1601(b). The various petitions for costs and sanctions did not change the nature of the action, but were addressed to the court's power to administer orderly litigation. Accordingly, the lower court properly denied appellants' request for a jury trial.

 Appellants contend that the lower court erred in requiring them to pay Strout Realty's commission and Barbour's costs of bidding for the property. Appellants argue that neither Strout nor Barbour were parties permitted to recover costs and that Strout's and Barbour's petitions were an improper means to commence what appellants allege should have been separate actions for damages to be instituted by complaints. These contentions lack merit. The allowance of costs in equity is with the trial court's sound discretion. *Gold & Co. v. Northeast Theater Corp.,* 281 Pa.Superior Ct. 69, 421 A.2d 1151 (1980). Ordinarily, costs relating to the existence, possession, or disposition of a fund should be borne by the fund. 42 Pa.C.S.A. § 1726(2)(i). However, the court may shift responsibility for costs as a penalty for violation of general rules or rules of court. *Id.* (3). Here, the court shifted responsibility for the cost of Strout's commission and Barbour's bidding from the estate

to appellants' share of the estate. Both Strout and Barbour became participants in the action pursuant to the court orders for listing the realty and for the sealed-bid procedure. They complied with the orders, but instead of recovering their costs from completion of the transactions, they were prevented from doing so by appellants repeated bad faith refusals to sign the deed. Strout and Barbour thus petitioned the court for their costs, and the lower court, within its discretion, placed those costs on appellants' share of the estate. Accordingly, we will not disturb this portion of the court's order.

Appellants contend finally that the lower court erred in requiring them to pay Nancy Brenckle's and Nancy Arblaster's counsel fees. Appellant Arnetta Andrews further contends that the lower court erred in requiring her to pay punitive damages. Specifically, appellants argue that the record does not support the court's finding of arbitrary, vexatious, and outrageous bad faith conduct so as to justify these sanctions against appellants' share of the estate. We disagree. The court may require a party to pay another participant's counsel fees if the party's conduct during the pendency of the matter was "dilatory, obdurate, or vexatious," or if the party's conduct in commencing the action or otherwise was "arbitrary, vexatious or in bad faith." 42 Pa.C.S.A. § 2503; *In re Roos' Estate*, 305 Pa.Superior Ct. 86, 451 A.2d 255 (1982). If the record supports the court's finding of fact that conduct was in bad faith, the court's award of counsel's fees will not be disturbed absent an abuse of discretion. *See Shearer v. Moore*, 277 Pa.Superior Ct. 70, 419 A.2d 665 (1980). Punitive damages are allowed when "the act which creates actual damage also imports insult or outrage, and is committed with a view to oppress, or appears to have been committed in contempt of [the other's] rights." *Golomb v. Korus*, 261 Pa.Superior Ct. 344, 347, 396 A.2d 430, 431 (1978). Here, the record supports the lower court's findings that appellants' conduct was arbitrary, vexatious, and in bad faith, and that the conduct of those who received the counsel fees and damage award was appropriate. Evidence indicated that Arnetta

Andrews never intended to comply with the family agreement, even though she did take initial steps to acquire the property under it. Further, she victimized Nancy Brenckle by unilaterally stopping payment on the check Ms. Brenckle had used as down payment on the mobile home. Then, during the litigation, appellants, after having agreed to the procedure for listing the realty, twice refused to sign the deed at the last moment after a buyer was obtained. They asserted colorable legal claims both times, but the record reveals that they knew their arguments, that Haun was financially irresponsible and that Barbour's deed did not adequately provide for mineral rights, were factually frivolous. Additionally, they gave no opportunity to the other parties to contest the assertions before the scheduled closings. Finally, after agreeing to and participating in the sealed-bid procedure, appellants defied a specific court order to sign the deed. This conduct supports the court's finding of bad faith obstruction of a series of court orders, and thus justifies the court's award of counsel fees to be charged against appellants' shares of the estate. The record also indicates that Arnetta Andrews initiated the obstructionist conduct, thus justifying the award of punitive damages against her. Accordingly, we affirm the lower court's order.

Affirmed.