NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 20-3547 and 20-3550
_____

PHILIP T. SIEGEL, DDS,
Appellant

v.

MARK GOLDSTEIN, DDS; BRIAN SMITH, DMD;
JOSEPH MULLIGAN, DMD; SAMER ABDELSAMIE, DMD;
DELAWARE VALLEY MAXILLOFACIAL AND ORAL SURGERY, P.C.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-19-cv-02890)
District Judge: Honorable Wendy Beetlestone
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 7, 2022
_____

Before: GREENAWAY, JR., SCIRICA, and COWEN[*], *Circuit Judges*.

(Opinion Filed: June 22, 2022)
_____

OPINION[**]
_____

[*] The Honorable Robert E. Cowen assumed inactive status on April 1, 2022, after the conference in this case, but before the filing of the opinion. This opinion is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d) and Third Circuit I.O.P. Chapter 12.

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**GREENAWAY, JR**., *Circuit Judge*.

In this appeal, Appellant Philip T. Siegel, DDS, seeks to undo the decision of an arbitrator approving his former business partners' cancellation of his shares in Delaware Valley Maxillofacial and Oral Surgery, P.C. ("DVMOS"). Because Siegel entered into a binding arbitration agreement to resolve legal claims with his former partners in DVMOS, Mark Goldstein, DDS, Brian Smith, DMD, Joseph Mulligan, DMD, Samer Abdelsamie, DMD (collectively with DVMOS, "Appellees"), we will affirm the order of the District Court confirming the arbitration award. However, because all parties also agreed that equitable claims would fall outside the scope of the arbitration agreement, we will vacate the District Court's order dismissing Siegel's federal action and remand for further proceedings on all claims that sound in equity.

## I.    BACKGROUND

This appeal arises out of a business dispute and subsequent arbitration between the parties. In January 2003, Goldstein and Siegel co-founded Delaware Valley Maxillofacial and Oral Surgery LLC ("DVMOS LLC"). Additional members subsequently joined DVMOS LLC, and all members executed an operating agreement, effective May 1, 2005. In April of 2016, DVMOS LLC was converted into a professional corporation ("DVMOS") at the recommendation of DVMOS LLC's and Siegel's accountant, William Burns. The conversion entailed execution of a shareholders' agreement ("Shareholders' Agreement") by Siegel and the other partners. At the time of the conversion, each partner had an equal share in, and received equal distributions from,

2

DVMOS.  The Agreement provided that all shareholders would be licensed to render oral and maxillofacial surgery services in Pennsylvania.  Moreover, the Shareholders' Agreement included an arbitration clause.  The claims at issue in this action arise solely from Shareholders' Agreement.

In February 2019, Siegel's partners discovered that his dentistry license had been inactive since December of 2014, before the partners entered into the Shareholders' Agreement.  Siegel did not notify the other members that his license was inactive at the time of execution of the Shareholders' Agreement.  Nevertheless, he continued to collect his distributions[1] pursuant to the 2005 operating agreement and the Shareholders' Agreement.

The partners contacted Siegel to determine if he would be willing to be bought out.  The partners, however, were unable to come to an agreement concerning the terms of a buyout.  Instead, Appellees issued a notice of cancellation, cancelling Siegel's shares (and hence, all distributions) on the theory that the initial transfer of shares to him was *void ab initio* due to his inactive status.

### A.  Procedural Background

On July 2, 2019, Siegel commenced this suit in the District Court, seeking an injunction requiring Appellees to return his shares.  The next day, Appellees initiated a JAMS arbitration.

---

[1]  The distributions to each partner came about as a result of the number of shares each held.  Appellees argued that given Siegel's inactive status he should not have received any distributions beginning in April 2016 going forward.

3

In its arbitration demand, DVMOS sought:

(i) a declaratory award confirming that [Siegel']s shares of [DVMOS] were properly cancelled, under the . . . Shareholders' Agreement, because he was not licensed to perform dental services in Pennsylvania, and (ii) a monetary award against [Siegel] for distributions received while he was not properly licensed and, consequently, ineligible to be an owner of [DVMOS].

JA488. Siegel objected, arguing that his claims were equitable and thus were subject to an arbitration exception in the Shareholders' Agreement. After Siegel filed an amended complaint, the District Court stayed the case pending conclusion of the arbitration proceeding.

Arbitration commenced, and the Arbitrator determined that Siegel was precluded from being a shareholder. Specifically, the Arbitrator reasoned that "[a]t the time the [Shareholders' Agreement] was signed [Siegel] knew he was not able to perform dental services. While no one may have intended the conversion to preclude [Siegel] from owning shares, it unfortunately did just that." JA552. The Arbitrator further concluded that the Appellees "were legally entitled to cancel the shares, however, not without proper compensation." JA553. The Arbitrator made the following conclusions as part of the arbitration award:

1) [Appellees'] cancellation of [Siegel's] shares was justified, and [Siegel's] shares are not reinstated.

2) [Siegel] is not entitled to a monetary award and [Siegel] is not required to return any previous distribution.

3) Section 21 (d) of the Shareholder's Agreement gives the Arbitrator sole discretion whether to allocate to the non-prevailing party all or part of the fees of the arbitrator and/or the reasonable fees and costs of the prevailing party. I decline to award [Appellees] any fees or costs in this case.

4

> Although DVMOS is the prevailing party, this was a close call and each side will bear their own costs and attorney fees.

JA554.

Siegel then moved to vacate or modify the arbitration award or in the alternative leave to file a second amended complaint. Specifically, he argued that the Arbitrator's ruling that his stock could not be reinstated should be vacated because it impermissibly resolved his claim for equitable relief. In opposing this motion, Appellees cross-moved to confirm the arbitration award. The District Court declined to address the parties' cross-motions concerning the arbitration award, and instead granted Siegel leave to file a Second Amended Complaint.

In his Second Amended Complaint, Siegel added several claims based on theories of reformation and oppression of a minority shareholder. He also sought a declaratory judgment requesting Appellees be estopped from cancelling his shares. Appellees in turn moved to dismiss his Second Amended Complaint. The District Court then confirmed the Arbitrator's Award, granted Appellees' motion to dismiss, and issued a memorandum explaining the bases for the dismissal of Siegel's complaint. Siegel timely appealed both the order confirming the arbitration award and the order dismissing his Second Amended Complaint.

### B. Shareholders' Agreement

Three of the provisions from the Shareholders' Agreement are most relevant to this appeal. The first is the "Qualified Shareholders" provision, which states that "no shares shall be issued by the Corporation . . . except . . . to a person licensed to render the

5

Services in the [Commonwealth]." JA68 ¶2(c)(i)). The provision further provides that "[a]ny attempted issuance . . . in violation of this provision shall be void and ineffective . . . ." *Id.* ¶2(c)(ii).

The second is the "Involuntary Transfer" provision. Broadly speaking, events triggering an involuntary transfer fall into the following categories: (1) misappropriation or disloyalty; (2) criminal conduct or convictions related to fraud or the practice of dentistry; (3) suspension, revocation, or surrender of license related to professional misconduct; (4) professional misconduct more generally; (5) an inability of the corporation to purchase liability insurance at a certain price; and (5) an uncured breach of the Shareholders' Agreement.

If an involuntary transfer event occurs, the Shareholders' Agreement dictates that "such Shareholder shall be deemed a Transferring Shareholder and shall be deemed to have sent a Sale Notice to the Purchaser offering to sell all of the Transferring Shareholder's Shares to the Purchaser for the Purchase Price." JA72 ¶(4)(b)(i). The "Purchase Price" is a defined term, setting the value of a share at fifty percent of DVMOS's gross receipts for the preceding twelve months multiplied by the Shareholder's proportional ownership interest in DVMOS.

Third, the Shareholders' Agreement includes an arbitration provision, which states:

> The parties are agreeing that expedited arbitration shall be the exclusive remedy to resolve any dispute or alleged breach relating to this agreement, whether statutory or sounding in contract or in tort, excepting (i) the enforcement of the restrictive covenants, (ii) *other*

6

*actions in equity*, and (iii) actions with an amount in dispute of less than $12,000.00.

JA78 ¶ 21(b) (emphasis added).

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. §1332.  We have jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(D) and 28 U.S.C. §1291.

In reviewing a district court's order confirming an arbitration award, we review that court's factual findings for clear error, and its legal conclusions de novo. *China Minmetals Materials Imp. & Exp. Co., Ltd. v. Chi Mei Corp.,* 334 F.3d 274, 278 (3d Cir. 2003) (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 947–48 (1995)).

We exercise plenary review over a district court's grant of a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. *Grier v. Klem*, 591 F.3d 672, 676 (3d Cir. 2010). "[I]n deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).  To withstand a Rule 12(b)(6) "motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## III.    DISCUSSION

### A. Confirmation of the Arbitration Award

The Federal Arbitration Act ("FAA") provides that:

7

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9. The FAA further provides that an arbitration award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010).

In addition, the FAA provides that an arbitration award may be modified "[w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted." 9 U.S.C. § 11(b).

Pursuant to the Shareholders' Agreement, the arbitration award should be confirmed in so far as it resolves legal claims above a certain amount. Indeed, the arbitration provision sets forth that arbitration is the exclusive remedy to resolve disputes or breaches under the agreement unless a party brings forth a claim: (1) to enforce a restrictive covenant; (2) that sounds in equity; or (3) is for damages less than $12,000.

In the arbitration, DVMOS brought legal claims. It sought a declaratory judgment that it properly cancelled Siegel's shares and money damages for the shares that were disbursed. Siegel does not dispute that Appellees brought legal claims through the arbitration proceedings. Instead, Siegel challenges the Arbitrator's ruling declining to

8

reinstate his shares. He contends that the Arbitrator's ruling effectively determined his equitable claim for breach of contract.

Upon review, however, the Arbitrator did not squarely address Siegel's equitable claims. Although it declined to reissue Siegel his shares, it did not make a determination that Siegel was not entitled to equitable relief; rather, it simply decided the legal issues in Appellees' demand. Accordingly, Siegel has not set forth any valid basis to vacate, modify or otherwise correct the arbitration award. *See* 9 U.S.C. § 9.

### B. Motion to Dismiss

The District Court correctly observed that its task in resolving the motion to dismiss "in essence involves a question of line-drawing" as to whether Siegel's claims were actions at law or in equity. JA20. However, we conclude that Siegel pleaded several claims on the equity side of the line. In short, Siegel alleged that his ownership interest in DVMOS was cancelled in violation of the Shareholders' Agreement and sought judgment returning his stake in this professional corporation. Because the particulars of Siegel's ownership interest leave him without an otherwise adequate remedy at law, Siegel's claims for equitable relief are not precluded solely on the basis of the arbitration provision of the Shareholders' Agreement.[2]

---

[2] Our determination does not preclude application of the doctrine of collateral estoppel. *See Witkowski v. Welch*, 173 F.3d 192, 199-200 (3d Cir. 1999). We leave it to the District Court to determine whether collateral estoppel is applicable and, if so, what its effect on Appellant's surviving claims is.

### i. Breach of Contract

Pursuant to Pennsylvania law,[3] breach of contract claims may sound in law or equity. A determination as to whether a party brings a legal or equitable breach of contract claim turns on the type of remedy sought. While a breach of contract claim for monetary damages is an action at law, a breach of contract claim seeking equitable relief is an action in equity. *See, e.g., Aldrich v. Geahry*, 80 A.2d 59, 61 (Pa. 1951) (contract action for specific performance sounded in equity, rather than in law); *Martindale Lumber Co. v. Trusch*, 681 A.2d 803, 805-06 (Pa. Super. Ct. 1996) (contrasting breach of contract actions seeking monetary damages with those seeking equitable relief).

Siegel's breach of contract claim sought equitable relief in the form of a reissuance of his shares. The District Court concluded that Siegel's claim had an adequate remedy at law. It reasoned that the involuntary termination provision of the Shareholders' Agreement established the value of Siegel's shares.

On the contrary, we conclude that Siegel's ownership interest "has a peculiar value to plaintiff incapable of being measured in damages in an action at law." *Aldrich*, 80 A.2d at 61. The object of his complaint, therefore, is not for damages but for the rights and privileges of ownership in DVMOS. His claim therefore sounds in equity, not law, and is subject to the arbitration exception.

---

[3] Here, the Shareholders' Agreement identified Pennsylvania law as governing interpretation of the agreement in its choice-of-law provision.

Given that the arbitration clause carves out breach of contract claims sounding in equity, the District Court erred when it dismissed Siegel's breach of contract claim on the basis that it was required to be submitted in arbitration.

## ii. Fiduciary Duty and Minority Shareholder Oppression

Pursuant to Pennsylvania law, claims for breach of fiduciary duty "sound[] in tort and in equity." *Linde v. Linde*, 220 A.3d 1119, 1147 (Pa. Super. Ct. 2019). The related claim for minority shareholder oppression sounds in equity. *Ford v. Ford*, 878 A.2d 894, 905 (Pa. Super. Ct. 2005) (a "claim of oppressive conduct, like a claim of breach of fiduciary duty, sounds in equity") (internal quotation marks and citation omitted)).

The District Court concluded, and Appellees likewise argue, that Siegel's claims "[n]evertheless . . . do not fall within the carve out provision of paragraph 21(b) because 'a plaintiff in a shareholder suit, as in any other suit, must lack an adequate legal remedy before bringing his suit in equity.'" JA27 (citation omitted). But here, Siegel does not have an adequate remedy at law because the buyout formula contained in the Shareholders' Agreement only contemplates a method to value shares if a shareholder is required to sell. It does not contemplate damages for improperly depriving a shareholder of his rights in a corporation, including the rights to: (1) inspect the corporate books and records, 15 Pa. Cons. Stat. §1508, (2) to receive notice of and attend meetings of shareholders, 15 Pa. Cons. Stat. §1704, or (3) to vote his shares, 15 Pa. Cons. Stat. §1758. The District Court improperly granted the motion to dismiss as to this claim.

11

### iii. Declaratory Judgment

A declaratory judgment claim may sound in law or equity. *Owens-Illinois, Inc. v. Lake Shore Land Co.*, 610 F.2d 1185, 1189 (3d Cir. 1979); *accord Geisinger Clinic v. Di Cuccio*, 606 A.2d 509, 521 (Pa. Super. Ct. 1992). "A workable formula that has been developed is to determine in what kind of suit the claim would have come to court if there were no declaratory judgment remedy." *Owens-Illinois*, 610 F.2d at 1189 (citation omitted).

Siegel seeks a declaratory judgment in two counts of the Second Amended Complaint. In Count VIII, he seeks a declaration that he is a shareholder in good standing and that cancellation of his shares was invalid. In Count XI, Siegel seeks a declaratory judgment that his shares are equitably estopped from being cancelled. To the extent that the inverted breach actions sound in equity, the District Court improperly granted the motion to dismiss.

### iv. Reformation

Pursuant to Pennsylvania law, "[m]utual mistake will afford a basis for reforming a contract." *Zurich Am. Ins. Co. v. O'Hanlon*, 968 A.2d 765, 770 (Pa. Super. Ct. 2009) (quoting *Holmes v. Lankenau Hosp.*, 627 A.2d 763, 767 (Pa. Super. Ct. 1993)). A "mutual mistake occurs when the written instrument fails to properly set forth the true agreement among the parties." *Id.* (quoting *Daddona v. Thorpe*, 749 A.2d 475, 487 (Pa. Super. Ct. 2000)). But, "[m]utual mistake exists . . . only where both parties to a contract are mistaken as to existing facts at the time of execution." *Felix v. Giuseppe Kitchens &*

*Baths, Inc.*, 848 A.2d 943, 948 (Pa. Super. Ct. 2004) (internal quotation marks, brackets, omitted).

Here, all parties were not mistaken as to the status of Siegel's license, the critical existing fact. Indeed, Siegel knew that his license was inactive at the time he executed the Shareholders' Agreement. Siegel operated under no such mutual mistake. Accordingly, Siegel's reformation claim fails, and the District Court correctly dismissed it.

## IV. CONCLUSION

We will affirm the District Court's order confirming the arbitration award. We will vacate the District Court's order dismissing Siegel's complaint with prejudice and remand for further proceedings on Siegel's requests for equitable relief.