Gerald S. BERG and Moira A. Berg, H/W, and Barry S. Yaches, Appellants,

v.

GEORGETOWN BUILDERS, INC. and Charles S. Sweet and Ann R. Sweet, H/W and William Boyle and Barbara Boyle, H/W, Appellees.

Superior Court of Pennsylvania.

Argued Sept. 24, 2002.
Filed April 17, 2003.

Barry S. Yaches, Wyncote, for appellants.

G. Michael Carr, Doylestown, for Georgetown, appellee.

BEFORE: McEWEN, P.J.E., TODD,

and MONTEMURO *, JJ.

OPINION PER CURIAM:

¶1 Appellants, Moira A. and Gerald S. Berg, were the unsuccessful plaintiffs in an equity action filed against appellees, and appellant Barry S. Yaches was their attorney.[1] They bring this appeal[2] from an order of the trial court assessing counsel fees against them under 42 Pa.C.S. § 2503. We are constrained to reverse the order of the trial court.

¶2 In 1992, appellee, Georgetown Builders (hereinafter Georgetown), submitted to Buckingham Township (hereinafter Township) a preliminary subdivision plan for development of the Ash Mill subdivision, proposing to carve 13 lots out of the site on which single-family detached homes were to be built. According to the Township's subdivision ordinance, Georgetown was required as part of its submission to provide a site plan illustrating, inter alia, all proposed natural resource disturbances on the site. Georgetown requested and was granted a waiver of that requirement. In its place the Township required Georgetown to submit a proposed natural resource disturbance plan as each lot in the subdivision was developed.

¶3 The Township, on August 12, 1992, granted final approval to the Ash Mill subdivision, with the condition that the natural resource disturbance calculations be done "on a lot-by-lot basis." Georgetown was also required to comply with all other existing zoning restrictions. Consequently, in developing this site Georgetown was required to comply with the Township's zoning requirement that no more that 20% of the forested area of the subdivision was permitted to be altered, re-graded, cleared, or built upon.

¶4 Since the Township permitted the natural resource disturbance calculations to be delayed until each lot was developed, a note was placed upon the final recorded plan to inform purchasers that an individual plot plan had to filed with the Township engineer prior to the issuance of a building permit. That note, designated "Note 8", provided:

THE ALLOWABLE RESOURCE DISTURBANCE OF THE LOTS HAS BEEN CALCULATED ON SHEET 2 OF 8. THE DISTURBANCE CAN BE LOCATED ANYWHERE ON THE LOTS, PROVIDED THE APPROPRIATE RESOURCE RESTRICTIONS ARE COMPLIED WITH. ACTUAL DISTURBANCE ON THE SINGLE FAMILY LOTS SHALL BE IDENTIFIED ON AN INDIVIDUAL BASIS VIA SUBMISSION OF PLOT PLANS FOR EACH LOT. THE TOWNSHIP ENGINEER SHALL REVIEW EACH INDIVIDUAL LOT DEVELOPMENT PLAN PRIOR TO ISSUANCE OF A BUILDING PERMIT. **DISTURBANCE ON EACH LOT SHALL OCCUR SUCH THAT THE TOTAL DISTURBANCE ON ALL LOTS WILL NOT EXCEED MAXIMUM ALLOWABLE DISTURBANCE FOR THE SITE.** ALL RESOURCE RESTRICTIONS SHALL RUN WITH THE LAND AND BE BINDING ON THE PRESENT AND FUTURE OWNERS AND/OR LESSEES.

Final Subdivision Plan, Exhibit P–3. (emphasis added).

---

* Retired Justice assigned to Superior Court.

1. Since their interests in this appeal are identical, we will refer to the appellants collectively as "the Bergs".

2. As explained more fully below, this is the second time that this case has been before this Court.

¶ 5 Following the recordation of the final plans, Georgetown built a single home on combined lots 3 and 4, and a single home on lot 5. Georgetown sold lots 1, 2, 6, 8, 9, and 10 to another developer, Richard D. Zaveta, Jr. (hereinafter Zaveta), who constructed homes on those lots. The Bergs purchased their home on lot 10 from Zaveta, and took possession of their home on November 6, 1993. The deed from Zaveta to the Bergs expressly incorporated the final subdivision recorded plan.

¶ 6 In 1995, Georgetown submitted plot plans for the last three lots (i.e., lots 7, 11, and 12). The Township engineer, however, by letter dated November 29, 1995, notified Georgetown that development of those lots would result in the removal of more than the allowable number of trees. Georgetown and the Township submitted competing calculations as to the number of trees that had been removed, but ultimately both parties agreed that Georgetown's development plans for the final three lots would result in Georgetown exceeding the 20% maximum allowable disturbance. Because the Township would not issue building permits for the last three lots, Georgetown applied to the Township's Zoning Hearing Board (hereinafter Board) for a variance from the terms of the zoning ordinance.

¶ 7 Following a public hearing on March 15, 1996, the Board granted Georgetown's request for a variance, and gave Georgetown permission to clear up to 10% of the mature trees on lot 7, and 15% on lots 11 and 12. The Board also required Georgetown to plant up to 53 new trees in the Township, with the residents of the Ash Mill subdivision having the option to request the planting of a *pro rata* share of the trees upon their lots prior to the trees being planted elsewhere in the Township. Georgetown was also required to donate $75,000, minus the cost of the 53 trees, to the Land Preservation Fund of Buckingham Township. Pursuant to the terms of the variance, Georgetown proceeded to cut down trees on lots 7, 11, and 12.

¶ 8 Although appellant Gerald Berg had formally intervened in the zoning proceedings and received a copy of the Board's decision, he did not appeal the grant of a variance. Craig Smith, however, an owner of property adjacent to the Ash Mill subdivision and also a party to the proceedings, did file a timely appeal of the grant of the variance. Moreover, in August, 1996, Smith also instituted a separate equity action in the Court of Common Pleas of Bucks County seeking to halt further development on the Ash Mill site.

¶ 9 In September, 1996, following a settlement agreement between Georgetown and Craig Smith, whereby Georgetown agreed to pay Smith $37,500.00, Smith withdrew all of his pending claims.

¶ 10 Thereafter, on November 19, 1996, the action giving rise to the present litigation was initiated. The Bergs filed a complaint in equity and a petition for a preliminary injunction against Georgetown and the three remaining lot owners. In their complaint the Bergs sought as relief an order: (a) enjoining Georgetown and the other named defendants from "violating the terms of the covenants set forth in the notes to the plan in this matter and recorded in the office of the Recorder of Deeds of Buck County;" (b) compelling Georgetown and the other named defendants "to replace and replant ... that portion of the forest that ha[d] already been cleared on lots 7, 11 and 12 of the development"; (c) compelling Georgetown and the other named defendants "to remove any structures that ha[d] already been erected on lots 7, 11 and 12 of the development"; and (d) granting "such other relief as the court may deem just and proper." The petition for a preliminary

injunction sought a temporary order granting the above requested relief, as well as a claim for damages. Both the complaint and petition for preliminary injunctive relief were grounded upon the restrictions contained in "Note 8" that appeared on the recorded subdivision plans.

¶ 11 The trial court, on December 3, 1996, held a hearing on the request for a preliminary injunction and, following the receipt of evidence and argument of counsel, dismissed the petition without comment.[3] No appeal was filed from this denial of preliminary relief.

¶ 12 One year thereafter, on December 15, 1997, the trial court commenced a three-day trial on the merits of the Bergs' equity complaint. Following the presentation of evidence the trial court ordered the parties to submit proposed findings of fact and conclusions of law, along with supporting legal memoranda. *See:* N.T. December 18, 1997, pp. 79–80. The parties complied with the order of the trial court, and

after consideration of the evidence and arguments of counsel, the trial court, on June 17, 1998, issued a "Decree Nisi" entering "judgment ... in favor of defendants and against plaintiffs [the Bergs]."

¶ 13 The only exceptions to the Decree Nisi were filed by the owners of lot 11, William and Barbara Boyle,[4] who sought a ruling on their counterclaim against the Bergs for counsel fees. These exceptions were denied,[5] and the Decree Nisi made final on July 31, 1998.[6] No appeals were filed from this Final Decree.[7]

¶ 14 Thereafter, petitions were filed by the Boyles and Georgetown seeking counsel fees. The Boyles sought fees from both Georgetown (on an indemnity theory) and the Bergs, while Georgetown only sought fees from the Bergs. The trial court, on May 11, 1999, denied the Boyles' claim against Georgetown, but, on July 28, 1999, granted the Boyles' claim for attorney fees from the Bergs. Following the

---

3. The trial court merely issued the following order: "On action number 96–8472, the motion to dismiss the petition for preliminary injunction is granted." N.T. December 3, 1996, p. 92.

4. Lot 11 was purchased by William and Barbara Boyle on May 1, 1996. The Boyles are parties to this appeal, and have their own appeal pending at No. 899 EDA 2002.

5. The trial judge ruled, *inter alia,* that attorney fees were not a valid counterclaim but required the filing of a "petition at the conclusion of the case."

6. In rendering the Decree Nisi final the Court entered the following Decree:

   AND NOW, this 31st of July 1998, upon consideration of defendants William and Barbara Boyle's Trial Exceptions [the only party to file exceptions] to Memorandum Opinion and Decree Nisi of June 17, 1998, and no response having been filed by any other party, it is hereby ORDERED and DECREED that defendants' Exceptions are DENIED. Our Memorandum Opinion and

Decree Nisi are supplemented by the foregoing Supplemental Memorandum Opinion. In all other respects, our *decree nisi* is hereby affirmed absolutely.

   Supplemental Memorandum Opinion and Final Decree. It bears noting that the "Supplemental Memorandum Opinion" filed in support of the Final Decree specifically states, albeit *in dicta,* that the record did *not* demonstrate that the conduct of appellants, in either the commencement or the continuance of their claim, warranted the imposition of counsel fees under subsection (7) or (9) of section 2503, 42 Pa.C.S. §§ 2503(7),(9). *See:* Supplemental Memorandum Opinion and Final Decree, July 31, 1999, p. 3.

7. Since appellants *did not* appeal the trial court's decision on the merits, it merits mention that all subsequent litigation, involving separate petitions for attorneys fees filed by both the Boyles and Georgetown, namely, one prior appeal to this Court, a remand to the trial court, plus two more appeals to this Court, has been caused by the attempts of original defendants to recover counsel fees.

assessments of the amounts due, the decrees were made final in December, 1999. It was from these final decrees that the first round of appeals were taken to this Court, even though at the time of these appeals the trial court had not yet ruled on Georgetown's petition for fees.

¶ 15 The Boyles' appeal, which was from the December 20, 1999, final decree denying their indemnity claim against Georgetown, was docketed in this Court at No. 138 EDA 2000. The Bergs' appeal, which was from the final decree of December 16, 1999, holding them responsible for the Boyles' attorney fees, was docketed in this Court at No. 418 EDA 2000. These appeals were ·consolidated for disposition and, on December 29, 2000, a panel of this Court entered a Judgment Order, concluding that the decrees appealed from were not final because the trial court had not disposed of Georgetown's outstanding motion for attorney fees. Thus, pursuant to Pa.R.A.P. 341, the panel quashed the appeal and remanded the cases to the trial court for entry of a final decree that would dispose "of all parties and claims."

¶ 16 On remand the trial court addressed the outstanding petition of Georgetown and, on February 5, 2002, entered an award against the Bergs and their attorney, Barry S. Yaches, in the amount of $46,265.75.[8] This order was appealed by the Bergs and Attorney Yach-

es, and is the order currently before this panel.[9]

¶ 17 On this appeal the Bergs' brief sets out five questions involved on appeal. In the argument section, however, they provide only two contentions: [10]

The trial court abused its discretion in concluding that the appellants had acted arbitrarily, vexatiously and in bad faith in commencing suit in this case because that conclusion is not supported by specific findings of fact or the evidence of record.

The trial court committed error in allowing the joinder of Barry S. Yaches, Esquire, as a party plaintiff and in finding him jointly and severally liable with appellants for appellees' attorney's fees.

Rule 2119(a) provides that:

The argument [section of the brief] shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type on in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a). The failure to comply with this mandate results in a waiver of issues. *See generally: Bunt v. Pension Mortgage Associates, Inc.,* 446 Pa.Super. 359, 666 A.2d 1091, 1095 (1995). Consequently, we need only review the two argu-

---

**8.** The trial court filed an "Adjudication" dated February 5, 2002, awarding Georgetown attorneys' fees in the amount of $46,265.75. This award was entered jointly and severally against the Bergs and their attorney, Barry S. Yaches. The present appeal was thereafter filed by the Bergs and Mr. Yaches.

**9.** Collateral to this order the Boyles, who were the appellants on original appeal No. 138 EDA 2000, refiled their appeal, and this appeal is now docketed at No. 899 EDA 2002. As remarked above, the primary issue in this latter appeal is whether the Boyles should be

reimbursed for their counsel fees by Georgetown. The appellants (i.e., the Bergs and Yaches) did not refile an appeal from the original trial court order awarding the Boyles counsel fees against them. Thus the only award that is currently before this Court is the award of attorney fees to Georgetown.

**10.** Appellants do not contest the amount of the counsel fees, but attack the threshold finding that fees were recoverable under 42 Pa. C.S. § 2503.

ments that have been presented to us. Moreover, because these issues are inextricably linked we will discuss them together.

¶ 18 The relevant standard of review governing our review of an award of attorney fees by a trial court has been well stated by the Pennsylvania Supreme Court, to wit:

Appellate review of a trial court's order awarding attorney's fees to a litigant is limited solely to determining whether the trial court palpably abused its discretion in making a fee award. *In re Estate of Liscio,* 432 Pa.Super. 440, 444, 638 A.2d 1019, 1021 (1994), *appeal denied,* 539 Pa. 679, 652 A.2d 1324 (1994). If the record supports a trial court's finding of fact that a litigant violated the conduct provisions of the relevant statute providing for the award of attorney's fees, such award should not be disturbed on appeal. *Id.* . . .

*Thunberg v. Strause,* 545 Pa. 607, 614–615, 682 A.2d 295, 299 (1996). We, therefore, must review the trial court's award in light of this standard.

¶ 19 The award of the trial court was based upon statutory authority which permits the award of fees to a party where "the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith." 42 Pa.C.S. § 2503(9). The Pennsylvania Supreme Court has prescribed the factors to be considered in considering whether litigation was commenced arbitrarily, vexatiously or in bad faith:

The statutory provision at 42 Pa.C.S. § 2503(9) expressly permits a trial court to award reasonable counsel fees to a litigant when, *inter alia,* that litigant's opponent initiated the action arbitrarily, vexatiously *or* in bad faith. *Accord id.* An opponent's conduct has been deemed to be "arbitrary" within the meaning of the statute if such conduct is based on

random or convenient selection or choice rather than on reason or nature. *Bucks County Board of Supervisors v. Gonzales,* 158 Pa.Cmwlth. 664, 670–71, 632 A.2d 1353, 1356 (1993), *appeal denied,* 538 Pa. 618, 645 A.2d 1321 (1994). *Accord Black's Law Dictionary* 104 (6th ed., reprinted 1993). An opponent also can be deemed to have brought suit "vexatiously" if he filed the suit without sufficient grounds in either law or in fact and if the suit served the sole purpose of causing annoyance. *Id.; Black's Law Dictionary, supra,* at 1565. Finally, an opponent can be charged with filing a lawsuit in "bad faith" if he filed the suit for purposes of fraud, dishonesty or corruption. *Frick v. McClelland,* 384 Pa. 597, 600, 122 A.2d 43, 45 (1956) (*quoting McNair's Petition,* 324 Pa. 48, 187 A. 498 (1936)); *Bucks County Board of Supervisors, supra,* 158 Pa.Cmwlth. at 670–71, 632 A.2d at 1356; *Black's Law Dictionary, supra,* at 139.

*Thunberg v. Strause, supra,* 545 Pa. at 615, 682 A.2d at 299–300. Moreover, it is the burden of the party seeking counsel fees to prove the existence of one of the statutory conditions. *In re Estate of Roos,* 305 Pa.Super. 86, 451 A.2d 255 (1982), *cited with approval in Citizens for Responsible Development v. Carlisle Zoning Hearing Board,* 127 Pa.Cmwlth. 640, 562 A.2d 938, 940 (1989).

¶ 20 Since it is clear that an award of counsel fees is dependent upon the facts of each case, prior to examining the facts of the instant case, it is instructive to review recent cases in which Pennsylvania appellate courts have considered the issues of counsel fees.

¶ 21 In *Thunberg, supra,* the Supreme Court reinstated a trial court's award of counsel fees against a plaintiff who had filed suit against the estate of a man she had killed in an automobile collision. At

the time of his death the decedent had been travelling in his proper lane of traffic when plaintiff crossed a four-lane divided highway and struck decedent's vehicle head-on. Plaintiff, however, without conducting any investigation or having any factual support for her claim, initiated suit in which she alleged that the decedent was negligent in failing to avoid the accident. The Supreme Court concluded that the plaintiff's binding admissions "coupled with her attorney's testimony that he had undertaken virtually no pre-filing investigation of the accident which would support the theory of negligent *avoidance* of an accident, clearly demonstrate[d] that there was no reasonable basis" for the underlying suit. *Id.* at 618, 682 A.2d at 301. In support of its approval of the award of counsel fees the Court explicitly stated that the Judicial Code authorized trial courts to award counsel fees "in an attempt to curb the filing of frivolous and otherwise improperly brought lawsuits." *Id.* at 616, 682 A.2d at 300.

¶ 22 This Court, in *In re Estate of Liscio*, 432 Pa.Super. 440, 638 A.2d 1019 (1994), *appeal denied*, 539 Pa. 679, 652 A.2d 1324 (1994), reinstated an award of counsel fees that had been entered against a woman who challenged the proposed distribution of property of an estate. The protestor had been the natural daughter of the decedent, but she had been adopted by another family. The law was clear that her adoption barred her ability to take against the estate. Nonetheless, she filed her protest on the grounds that the adoption had taken place without notice to the decedent. Her claim was clearly barred by statute, but she sought to avoid the effect of the statute by asserting a public policy argument. In rejecting the validity of this theory, and in reinstating the award, the Court expressed the following rationale:

If Ms. DiPerna's claim would have merely been weak and subsequently found devoid of merit, it would not necessarily have equated with conduct that is arbitrary, vexatious or in bad faith. However, because Ms. DiPerna's claim had no reasonable possibility of success, coupled with her prolonging litigation and unnecessarily delaying distribution of the estate, as well as costing the estate thousands of dollars in attorney fees, we find such conduct is the conduct envisioned by 42 Pa.C.S. § 2503 permitting an award of attorney fees.

*In re Estate of Liscio, supra*, 638 A.2d at 1022.

¶ 23 In *Bykowski v. Chesed, Co.*, 425 Pa.Super. 595, 625 A.2d 1256 (1993), this Court affirmed an award of counsel fees in a case where the trial court found that the plaintiffs had acted "vexatiously" in continuing suit against a defendant who did not own the property where the alleged injury occurred. The trial court's order had been based on its findings that plaintiff: (a) "improperly sued people having no connection with the incident"; (b) "failed to agree to the removal of those parties when the error was repeatedly brought to his attention"; and (c) "failed to respond to [a] motion for judgment on the pleadings, thereby forcing the defendant to appear and argue his motion to extract defendants from a lawsuit they shouldn't have been in in the first place." *Id.* at 1259. These facts were sufficient for this Court to conclude that "[c]learly, ... appellants' conduct in not responding and in continuing the suit and this appeal against appellees was vexatious." *Id.*

¶ 24 In *Brenckle v. Arblaster*, 320 Pa.Super. 87, 466 A.2d 1075 (1983), this Court affirmed the entry of an award of attorney fees, as well as punitive damages, in a case where the trial court found that the appellants, legatees under a contested will, had

engaged in "blatant, obviant, arbitrary, and vexatious conduct ... designed to frustrate ... a series of court orders." *Id.* at 1077. Our Court found that the record clearly supported "the lower court's findings that appellants' conduct was arbitrary, vexatious, and in bad faith, and that the conduct of those who received the counsel fees and damage award was appropriate." *Id.* at 1078.

¶ 25 In *Dooley v. Rubin,* 422 Pa.Super. 57, 618 A.2d 1014 (1993), this Court affirmed the *denial* of the appellant's request for recovery of the counsel fees he had incurred in defending transferred judgments. The underlying dispute involved the question of whether the law of Florida (relating to interest due on a judgment) should be applied in the course of a collection action pursued in Pennsylvania. The Court's rationale in affirming the denial of attorney fees is succinctly stated in the following paragraph:

> [T]he record indicates that the denial of counsel fees under 42 Pa.C.S. § 2503 was proper because the appellee did not bring his petition in bad faith for the purposes of obstructing or delaying the enforcement of the appellant's transferred judgments.... [T]he appellee raised a highly credible claim concerning the applicable interest rate on a transferred judgment. This issue had not been addressed by our courts in many years and neither party relied in their briefs upon Pennsylvania case law in support of their respective positions.

*Id.* at 1018–1019.

¶ 26 In *Santilo v. Robinson,* 383 Pa.Super. 604, 557 A.2d 416 (1989), this Court also affirmed the trial court's *denial* of a prevailing party's request for attorney fees. The underlying case involved an automobile accident in which the appellant's vehicle was struck by the plaintiff's vehicle in a "chain reaction" collision. Following

pleadings and discovery the appellants sought summary judgment, but their motion was denied. Thereafter, the plaintiffs agreed to discontinue the action against appellants. Appellants, however, refused to discontinue their counterclaim for attorney fees, and then filed a motion for summary judgment on the fee issue. The trial court entered summary judgment in favor of the plaintiff, thereby denying the appellants' request for attorney fees. In affirming the trial court's decision our distinguished colleague and now President Judge Joseph A. Del Sole wrote:

> Although plaintiffs' claim against Appellant may not have been a strong one and while they may have not been able to prove their case of negligence, the record does not indicate that plaintiffs did not reasonably believe that their claim was valid under existing or developing law. 42 Pa.C.S. § 8352(1). In fact, it can be noted that the trial court refused to grant Appellant's motion for Summary Judgment on the liability issue.
>
> Actions are not brought only where there is certain proof of liability and damages. Punishing all those who initiate actions which are not ultimately successful by granting the defendant's request for counsel fees would have a chilling effect on [the] right to bring a suit for negligence. This was not the intent of the rule permitting recovery of counsel fees upon a showing of arbitrary, vexatious or bad faith conduct.

*Id.* at 417.

¶ 27 Two salient points emerge from a review of these cases:

(1) That an award of counsel fees is intended as a sanction against those who seek to use legal avenues to harass other parties, or attempt to

obtain a benefit to which they would not otherwise be legally entitled.[11]

(2) That a decision rendered by a trial judge on the issue of counsel fees should not be overturned unless compelling reasons exist to do so.[12]

¶ 28 The stated reasons for trial court's award of the counsel fees in this case were the insufficiency of evidence produced at trial, and the perceived motive of the Bergs for instituting suit.[13] However, as will be more fully explained below, these conclusions do not support, as a matter of law, an award of attorney fees.

■ ¶ 29 The threshold question for us is whether the Bergs' suit was "arbitrary", or filed without "reason." *Thunberg v. Strause, supra.* As stated above, Bergs' actions were grounded upon the theory that restrictions appearing on the recorded subdivision plan, specifically "Note 8" of the plan, were equivalent to restrictive covenants that ran with the land.

¶ 30 In *Perrige v. Horning*, 440 Pa.Super. 31, 654 A.2d 1183 (1995), this Court held that a land owner in a subdivision had standing to institute suit against the developers of the subdivision to enforce restrictive covenants that appeared on the recorded subdivision plan. The plaintiffs in *Perrige* had purchased a residential build-ing lot in a subdivision that had been carved out of a farm. The subdivision plan filed in the county Recorder of Deeds office contained "General Notes" that provided in relevant part:

2. THE TOTAL NUMBER OF LOTS 3 + RESIDUE ... LOT NO. 4 (RESIDUE) WILL BE USE[D] FOR AGRICULTURAL USE ONLY.

. . . .

9. THE RESIDUE LOT WAS AND WILL REMAIN AGRICULTURAL USE, NO WETLAND DELINEATION IS REQUIRED.

*Id.* at 1185.

Subsequent to the sale of the property to the plaintiffs, the developers filed a new subdivision plan with the local municipality seeking to further subdivide the remaining agricultural lot (i.e., Lot 4). The municipality approved a plan that included the carving out of two lots from the agricultural lot for annexation to other residential building lots. The plaintiffs sought an injunction to preclude this further subdivision. The trial court sustained the preliminary injunctions of the builder, holding that land planning matters were within the exclusive jurisdiction of the "local planning agency". On appeal to this Court appel-

---

**11.** *See: Slappo v. J's Development Associates, Inc.,* 791 A.2d 409, 416, n. 3 (Pa.Super.2002) ("The primary goal of § 2503(9) is to penalize the filing of frivolous legal actions."), *citing with approval, Miller v. Nelson,* 768 A.2d 858 (Pa.Super.2001), *appeal denied,* 566 Pa. 665, 782 A.2d 547 (2001).

**12.** *See: Citizens for Responsible Development v. Carlisle Zoning Hearing Board,* 127 Pa. Cmwlth. 640, 562 A.2d 938 (1989).

**13.** In support of the present award the trial judge set out the following conclusions:

8. Since no evidence was presented in support of the forms of relief requested in the complaint in equity the Bergs and Yach-es had insufficient grounds for filing suit against the defendants.

9. The Bergs and Yaches brought suit for the sole impermissible purpose of extracting money from the defendants.

10. The actual motive of the Bergs and Yaches from bringing suit was not to enforce a restrictive covenant, but instead to induce a monetary settlement.

11. The Bergs and Yaches are in violation of 42 Pa.C.S. Section 2503(9).

12. The defendants are entitled to be compensated for attorneys fees expended defending the lawsuit instituted by the Bergs and Yaches.

Adjudication and Decree of February 5, 2002, pp. 3–4.

lants challenged, *inter alia*, the rulings that they had no standing, and that there were no enforceable restrictive covenants.

¶ 31 This Court reviewed the appeal, as well as the appellants' underlying action as "an action to, *inter alia*, enforce alleged restrictive covenants in a previously approved subdivision plan, and to enjoin the submission of additional plans which may violate those restrictions." *Perrige, supra*, 654 A.2d at 1186. In reversing the trial court's finding of lack of standing, this Court, per our learned colleague Judge Phyllis Beck, wrote:

[L]andowners properly have invoked our courts' equity jurisdiction to review such matters in the past. In *Ballard v. Heppe*, 403 Pa.Super. 441, 589 A.2d 266 (1991), *appeal denied*, 529 Pa. 630, 600 A.2d 950 (1991), for example, this court held that landowners could enforce by injunction certain unambiguous notes in a subdivision plan relating to future lot sizes. We also have decided that an injunction should issue to protect lot owners who were granted "protective covenants" to preserve the residential nature of a development. *Gey v. Beck*, 390 Pa.Super. 317, 568 A.2d 672 (1990). *See also Doylestown Township v. Teeling*, 160 Pa.Commw. 397, 635 A.2d 657, 661 (1993) (conditions attached to subdivision plan as part of approval process constitute restrictive covenants running with the land and may be enforced in

equity by owner of other lots in subdivision).

*Perrige, supra*, 654 A.2d at 1186–1187. Thereafter, in examining the underlying merits of the plaintiffs' claim, the Court stated:

It is clear that a deed for land may incorporate by reference the conditions of a subdivision plan, and the plan conditions then become enforceable in equity by the interested deed holder. *Reed v. Reese*, 473 Pa. 321, 374 A.2d 665 (1976) (plaintiff landowner was entitled to specific relief or damages in action against later purchasers who sought to violate parkland restriction in subdivision plan).

*Id.*, 654 A.2d at 1187. The Court then concluded that the above cited conditions were sufficient to support a finding that a restrictive covenant existed, and held that "[c]onditions such as those contained in the Plan Notes in this case may be enforceable when the conditions are not *specifically* set forth in the deed conveying the subject property." *Id.*, *citing with approval*, *Doylestown Township v. Teeling*, 160 Pa. Cmwlth. 397, 635 A.2d 657 (1993), *appeal denied*, 539 Pa. 697, 653 A.2d 1234 (1994).[14] *See also: Ballard v. Heppe*, 403 Pa.Super. 441, 589 A.2d 266 (1991), *appeal denied*, 529 Pa. 630, 600 A.2d 950 (1991) (Notes in subdivision plan were held to create an enforceable restrictive covenant limiting lot size despite additional plan language

**14.** In *Doylestown Township v. Teeling*, 160 Pa.Cmwlth. 397, 635 A.2d 657 (1993), *appeal denied*, 539 Pa. 697, 653 A.2d 1234 (1994), the subdivision owner had argued that a condition on the recorded subdivision plan restricting further subdivision was against public policy, was not a covenant running with the land, and was not enforceable. The Commonwealth Court, however, rejected this argument. In ruling in favor of the objecting landowner the Court stated:

Because the subdivider agreed to the notation restricting further subdivision, that re-

striction, **which runs with the land,** is binding upon all subsequent purchasers. [footnote omitted] Thus, Teeling [appellant], a subsequent purchaser of the property, cannot now challenge the propriety of the conditions imposed as part of the original subdivision process.

*Id.*, 635 A.2d at 660 (emphasis added). This result obtained even though, as in the present case, a variance (resulting from a "deemed approval") had been granted in the interim.

which provided for future changes if approved by the planning commission.).

¶ 32 Thus, in light of *Perrige, supra,* we are compelled to the conclusion that the Bergs' actions in this case were not arbitrary, in that they were founded upon a legitimate theory that provided a reasonable basis to pursue litigation. *See, e.g.: Citizens for Responsible Development v. Carlisle Zoning Hearing Board, supra.*

■ ¶ 33 The second inquiry is whether the appellants pursued their claim "vexatiously", i.e., "without sufficient grounds in either law or in fact [or] if the suit served the sole purpose of causing annoyance." *Thunberg v. Strause, supra,* 545 Pa. at 615, 682 A.2d at 299. Parties have been found to have acted "vexatiously" when they have pursued their claim in the face of settled law or in contravention of clear court rulings that their claim was without merit. *See, e.g.: In re Estate of Liscio, supra; Bykowski v. Chesed, Co., supra; Brenckle v. Arblaster, supra.*

¶ 34 A review of the record in this case, however, is remarkable for its absence of any indication by the trial court, until its final decision denying relief, that the underlying cause of action was frivolous or lacking in merit. For example:

— when appellants' petition for a preliminary injunction was denied, the hearing judge did not opine that the relief sought by appellants was clearly without merit;

— the complaint in equity proceeded through the pleading stage during which appellees' preliminary objections in the nature of a demurrer were overruled;

— the issues as developed through the pleadings and discovery were considered sufficiently meritorious to warrant a three-day day bench trial;

— at trial, the Bergs' evidence was deemed sufficient to survive the requests for compulsory nonsuit that were made by both Georgetown and the Boyles;

— in its Memorandum Opinion in support of its Decree Nisi, and its later denial of the Boyles' exceptions, the trial court concluded as a matter of law that the Bergs were not guilty of "unclean hands", and were not precluded by that defense from recovering on the underlying equity action; and

— in the first review of a defendant's claim for counsel fees, namely, the Boyles' counterclaim, the trial judge actually expressed the view that there was no evidence of bad faith in the commencement or prosecution of this claim. *See:* Supplemental Memorandum Opinion and Final Decree, July 31, 1998, p. 3.

Moreover, the court's extensive analysis of the facts and issues prior to entering its "judgment" in favor of the defendants is inconsistent with a sense that the claims were frivolous or the litigation was solely vexatious.[15] It is further noteworthy that in the face of this adverse ruling the Bergs

---

15. In his *Memorandum Opinion in support of* the original Adjudication and Decree Nisi, the trial judge set out ninety-nine findings of facts, twenty-three conclusions of law, and a legal discussion that spanned fifteen typewritten pages. The judge's denial of relief was grounded upon his conclusions that: (1) the restrictions on the subdivision plan constituted a "personal covenant between Georgetown Builders and the Township" and hence were not enforceable by the Bergs, and (2) the Bergs were guilty of laches as a result of their election not to appeal a prior grant of a variance that had permitted appellees relief from the subdivision plat restrictions. *See:* Supplemental Memorandum Opinion and Final Decree, July 31, 1998 ("In our Memorandum Opinion and Decree Nisi, we found (1) that Note 8 did not create an unenforceable [sic], unambiguous contract in favor of plain-

did not further pursue the matter. Simply put, on this record there is no support for the trial court's conclusion that the Bergs acted "vexatiously" in prosecuting this action. *Compare: Chervenak, Keane & Co. v. Hotel Rittenhouse Associates, Inc.*, 328 Pa.Super. 365, 477 A.2d 487, 491 (1984) (Where trial court had on many occasions informed appellant that its contentions were without merit, the continued attempts to challenge the imposition of responsibility for arbitrators' fees were found to be without grounds and served only to cause annoyance.).

■ ¶ 35 Our final inquiry is whether the award of counsel fees can be justified on grounds of "bad faith", which requires us to decide whether the Bergs' action was filed "for purposes of fraud, dishonesty, or corruption." *Thunberg v. Strause, supra.*

¶ 36 The trial court relied upon, *inter alia,* its Memorandum Opinion of July 28, 1999, in arriving at its conclusions that the Bergs had insufficient grounds for filing suit against the defendants, and that "the actual motive" of the Bergs for initiating suit was to induce a monetary settlement, which the court regarded as an "impermissible" basis. In that Opinion the court listed under "Findings of Fact" that "at trial, the Bergs sought to prove economic harm,"[16] and "the Bergs demanded $68,500.00 from the Boyles to withdraw the Complaint in Equity against the Boyles."[17] The trial court regarded the first "fact" as inconsistent with the Bergs' original prayer for relief, and the second "fact" as the basis for its conclusion that the Bergs acted out of an "impermissible" motive.

¶ 37 There are two obstacles to these conclusions, namely, that a party in an equity action is not ineluctably bound by the terms of the original complaint, and the potential for a monetary settlement is not a *per se* "impermissible" basis for instituting suit.

¶ 38 The law is clear that an equity action is a fluid one in which a request for relief can be amended at any time. *See:* Pa.R.Civ.P. 1528 ("The prayer for relief may be amended as of course at any time."). *See also: Auen v. DiCesare,* 266 Pa.Super. 347, 404 A.2d 1324 (1979) (A plaintiff is permitted to amend his complaint even after the entry of a decree nisi.). Moreover, the Supreme Court has made it clear that "[o]nce equity has assumed jurisdiction of an action, *money damages may be awarded to insure a just result.*" *Solomon v. Cedar Acres East, Inc.,* 455 Pa. 496, 501, 317 A.2d 283, 285 (1974) (emphasis supplied). Thus, the Bergs' offer of evidence at trial, that Georgetown's violation of the subdivision restriction caused them economic harm, was not precluded by the relief sought in the complaint. Moreover, the mere proffer of such evidence to establish damages caused by the appellees' conduct was certainly not an abandonment of their original request for relief, nor an admission that the original request was a sham.

¶ 39 Next, we are compelled to address the trial court's "conclusion" that the institution of a lawsuit for purposes of inducing a monetary settlement is an "impermissible" basis for a suit. It bears emphasis

---

tiffs, and (2) that, even if Note 8 constituted an enforceable covenant, plaintiffs were not entitled to relief because their demand was barred by laches and was not just and equitable."). It bears emphasis that the trial judge's decision was not based upon a finding that appellants' claim was so lacking in merit as to constitute bad faith.

**16.** Finding of Fact No. 14, Memorandum and Decree Nisi of July 28, 1999.

**17.** Finding of Fact No. 16, Memorandum and Decree Nisi of July 28, 1999.

that the trial court provides no legal citation in support of this novel notion. Rather, it appears to have sprung from the trial court's belief that a litigant cannot institute suit based on the mere knowledge that another similarly situated individual was successful in suing a particular defendant.[18] Taken to its logical extreme such a principle would preclude, for instance, all product liability settlements with the exception of the plaintiff who litigated the first claim.

¶ 40 The pursuit of a monetary settlement in satisfaction of a perceived injustice is at the heart of our civil system of justice. Certainly, the system is not intended to be utilized to pursue fanciful claims, but the governors that have traditionally prevented the system from careening out of control are the requirements that there be a legal basis for the cause of action, and that there be an unsettled question in the law such that the prosecution of a claim is not a waste of resources.

¶ 41 In this case the withdrawal by Craig Smith of his complaint in equity and zoning appeal in return for Georgetown's payment of a significant settlement not only provided the Bergs with reason to believe that their claim had merit, it simultaneously deprived them of their surrogate prosecutor. Consequently, if they wished to vindicate their perceived injuries, they had no choice but to institute the underlying suit in this case. In such a situation there is simply no basis upon which to conclude that the suit was brought in bad faith.

¶ 42 In conclusion, in no case that we have reviewed, nor in any case that has been cited to us, has a court award of counsel fees been upheld under Section 2503 where the issues were so deeply at issue and so vigorously litigated. The law in Pennsylvania is clear that a plaintiff "cannot be penalized for bringing an action that was not ultimately successful." *Possessky v. Diem,* 440 Pa.Super. 387, 655 A.2d 1004, 1011 (1995). *See also: Santilo v. Robinson, supra,* 557 A.2d at 417 ("Although plaintiffs' claim against appellant may not have been a strong one and while they may have not been able to prove their case of negligence, the record does not indicate that plaintiffs did not reasonably believe that their claim was valid under existing or developing law."). Thus, we are compelled to reverse the award of counsel fees.

¶ 43 Order reversed.

---

18. In its Memorandum Opinion of July 28, 1999, which was relied upon by the court in its final "Adjudication", the trial court wrote: The type of settlement offer sought by the Bergs is further evidence of the real motive behind the lawsuit. Instead of seeking a settlement agreement consistent with the relief actually plead[ed] in the Complaint in Equity, the Bergs demanded the monetary sum of $68,500.00. The Bergs could have asked for a settlement agreement prohibiting the clearing of additional trees. The Bergs could also have asked for a settlement agreement calling for the replacement of the trees that had been removed. In lieu of these equitable forms of relief, the Bergs opted for a monetary settlement demand.

Memorandum Opinion, July 28, 1999, p. 8. Notably absent from this analysis, however, is the history that preceded the Bergs' settlement "demand". During the first hearing on counsel fees, it was established that the Bergs "demand" was only made in response to repeated requests by the Boyles to "provide a settlement demand". *See:* N.T. June 25, 1999, Exhibit Berg–1. Moreover, since "evidence of conduct or statements made in compromise negotiations" is not admissible into evidence, Pa.R.E. 408, we fail to see how a settlement figure can be a basis for concluding that the party's assessment of value of his claim constitutes evidence of bad faith.