NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4440
_____

LEROY THOMAS
a/k/a John Wayne

v.

*SECRETARY, PENNSYLVANIA DEPARTMENT OF CORRECTIONS; DAVID
DIGUGLIELMO, Superintendent of the State of Correctional Institute at Graterford;
JOSEPH P. MAZURKIEWICZ, Superintendent of the State Correctional Institution at
Rockview; THE DISTRICT ATTORNEY OF PHILADELPHIA

Leroy Thomas,
Appellant

*(Pursuant to Rule 43(c), Fed. R. App. P.)
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No.2- 07-cv-01067)
District Judge: Honorable J. Curtis Joyner
_____

Argued on June 21, 2012

Before: AMBRO, VANASKIE and ALDISERT, *Circuit Judges*

(Filed: September 5, 2012)

Leigh M. Skipper, Esq.
Chief Federal Defender
James Moreno, Esq.
Victor J. Abreu, Esq.
David W. Wycoff, Esq. [ARGUED]
Assistant Federal Defenders

Federal Community Defender for the Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
        *Counsel for Appellant*

Anne Palmer, Esq. [Argued]
Assistant District Attorney
Thomas W. Dolgenos, Esq.
Chief, Federal Litigation
Ronald Eisenberg, Esq.
Deputy District Attorney, Law Division
Edward McCann, Esq.
First Assistant District Attorney
R. Seth Williams, Esq.
District Attorney
3 South Penn Square
Philadelphia, PA 19107-3499
        *Counsel for the Appellees*

_____

OPINION
_____

VANASKIE, *Circuit Judge*.

This is an appeal from the denial of a habeas corpus petition challenging the first-degree murder conviction of Appellant Leroy Thomas, a/k/a "John Wayne" ("Wayne").[1] We granted Wayne a certificate of appealability with respect to whether trial counsel rendered ineffective assistance by 1) failing to investigate and present the testimony of known eyewitnesses, and 2) promising during opening argument at trial to present certain

_____

[1] We refer to the Appellant Leroy Thomas as "Wayne" to be consistent with the parties' briefs, Appellant's counsel's presentation of the case at oral argument, and to avoid confusion with the victim and his brother, who are also named Thomas but are unrelated to the Appellant.

2

evidence but then failing to do so. For the reasons stated below, we will affirm the District Court's denial of Wayne's habeas petition.[2]

I.

We write primarily for the parties, who are familiar with the factual context and legal history of this case. While the procedural history underlying Wayne's appeal is somewhat complex, we will set forth only those matters necessary to our analysis.

A.

During the night of June 28, 1994, Wilbert Thomas ("Wilbert") was fatally shot. Earlier that day, Wayne, co-defendant Rohn Vidal, and an unidentified female had allegedly abducted and threatened the victim's brother, Carlton Thomas ("Carlton"), in connection with money that was supposedly owed to the assailants' associate, Clinton Fishley. All of the men had grown up together in Jamaica and were well-known to each other. Carlton testified that the three abductors drew guns and demanded a ride in his car. Carlton stated that Wayne's gun looked like a nine millimeter. The three abductors searched Carlton's car and found about $300 before leaving him handcuffed to the gearshift.

Shortly before 11:00 p.m. that same evening, Wilbert was standing on the porch of a Philadelphia row home with Carlton and another childhood friend, Courtney Ellison ("Ellison"). Carlton saw Wayne and Vidal pass by in a car driven by Fishley. Carlton warned Wilbert and Ellison that he feared for his safety based on the incident that

---

[2] The District Court had jurisdiction over Wayne's habeas petition pursuant to 28 U.S.C. §§ 2241(a) and 2254(a). We have appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

3

occurred earlier in the day, and then fled the area. Soon afterward, two gunmen stormed the porch on which Wilbert was standing from different directions, each firing guns.

Ellison managed to escape and was the only witness who testified to have seen the shooting. Ellison identified Wayne and Vidal as the gunmen. He testified that Wayne and Vidal arrived at the house at the same time. The two repeatedly fired three guns, Wayne firing two and Vidal firing one, with Wayne reloading and continuing to fire after reloading. As Wilbert attempted to enter the home, Wayne continued to shoot at him from the sidewalk and ultimately shot Wilbert multiple times. Ballistics evidence corroborated Ellison's eyewitness account of the paths taken by Wayne and Vidal as they converged on the house. The medical examiner testified that Wilbert died of gunshot wounds from three bullets. A Criminal Evidence Specialist and a Police Officer testified that the cartridges and projectiles collected around the scene were nine millimeter, as were the projectiles recovered from the victim's body. The cartridges were found on the sidewalk and street; the projectiles were found on the porch.

Wayne and Vidal were jointly tried in the Philadelphia Court of Common Pleas. Wayne's counsel delivered a brief opening statement. Counsel informed the jury that the defense would demonstrate that Wayne "was not involved in [the homicide]" at all. (A. 51.) Defense counsel asserted that Wayne's innocence would be shown through Wayne's own testimony and through some of the "many, many people" who witnessed the shooting. (A. 50.) Trial counsel did not follow through with either promise. The jury deliberated over the course of two days and found Wayne guilty of first-degree murder of Thomas, Vidal guilty of third-degree murder, and found both guilty of conspiracy and

4

possessing an instrument of crime.[3] Wayne received a sentence of life imprisonment. The Pennsylvania Superior Court affirmed. *Commonwealth v. Wayne*, 723 A.2d 238 (Pa. Super. Ct. 1998) (unpublished memorandum) ("*Wayne-1*").

## B.

Wayne then sought relief under Pennsylvania's Post-Conviction Relief Act ("PCRA"). *See* 42 Pa. Con. Stat. § 9541 *et seq*. In an amended petition, he raised three claims, including that trial counsel was ineffective for failing to present testimony from Raygina Fearon ("Raygina"), Diana Fearon and Dominique Long, who were known eyewitnesses to the shooting.[4] The centerpiece of Wayne's bid for post-conviction relief was Raygina's alleged eyewitness account of the shooting and counsel's failure to pursue this aspect of Wayne's defense. Wayne advanced this argument, in part, by referencing counsel's opening statement at trial that he would present witnesses to attest to Wayne's innocence.

Attached as an exhibit to the PCRA petition was the statement Raygina gave to police within hours of the shooting, which was provided to counsel before trial. Raygina told police she lived at the address where the shooting occurred and that she was on the porch along with Diana Fearon and Dominique Long when Wilbert was shot. Raygina

---

[3] Wayne and Vidal were both acquitted of kidnapping, robbery, conspiracy, and possessing an instrument of crime in connection with events that allegedly occurred earlier that day with Carlton.

[4] Wayne's other claims concerned the trial court's allowance of evidence of and jury instructions on Wayne's effort to evade arrest, and the jury charge on conspiracy and reasonable doubt.

5

stated that she saw the shooter, whom she merely described as a "[b]lack guy." (A. 491.) Raygina did not see anyone else shooting or possessing a gun.

Also attached to the PCRA petition was a signed declaration, given under penalty of perjury, that Raygina provided to PCRA counsel in 2001 – over six years after Wilbert's murder.[5] Raygina reiterated that she was taken to the police station a few hours after the shooting and confirmed that she provided a statement to the police describing her account of the crime. Raygina declared that, after giving her statement to the police, she was not shown photographs, asked to view a lineup, questioned by the police again, visited by a defense attorney, or called to testify about what she saw. Raygina also stated that, after watching an episode of Crime Fighters, which featured a picture of Wayne as being wanted for the murder that occurred on her porch, she realized that Wayne was not the man whom she saw shoot the victim. Raygina also repeated that she only saw a single shooter with one gun that night.[6]

The PCRA court dismissed the petition without holding a hearing, concluding that none of Wayne's claims had merit. Wayne appealed to the Pennsylvania Superior Court, where he expanded his three discrete claims into eight issues. *Commonwealth v. Thomas*,

---

[5] Wayne erroneously refers to Raygina's written statement as an "affidavit." Although signed under penalty of perjury, the document was not notarized. Pennsylvania law defines an "[a]ffidavit" as a document "sworn to or affirmed before an officer authorized by the laws of th[e] Commonwealth to take acknowledgments of deeds, or authorized to administer oaths." *See* 1 Pa. Cons. Stat. § 1991.

[6] Also attached to the PCRA petition were statements attributed to Diana Fearon and Dominique Long. However, these statements were not considered as evidence because Diana Fearon and Dominique Long did not sign the documents.

839 A.2d 1164 (Pa. Super. Ct. 2003) (unpublished memorandum) ("*Wayne-2*"). Among the issues presented on appeal were whether the PCRA court had erred in failing to hold a hearing on trial counsel's alleged failure to investigate the three eyewitnesses and whether trial counsel rendered ineffective assistance by failing to furnish evidence of Wayne's innocence, as he said he would do in his opening statement. The Superior Court found that the claim based upon the failure to present promised evidence of innocence had been waived because it had not been presented as a separate claim in the PCRA petition. As to the ineffective assistance claim pertaining to the purported eyewitnesses, the Superior Court remanded the matter for an evidentiary hearing.

On remand, the PCRA court scheduled an evidentiary hearing for October 18, 2004. However, six days before the hearing, counsel for Wayne informed the PCRA court that he had just learned that Raygina had died – although she had passed away over a year earlier on March 2, 2003, while the previous PCRA appeal was pending in the Superior Court. Counsel for Wayne asked the PCRA court to postpone the hearing and allow the parties to provide briefs concerning the admissibility of Raygina's statement. In his brief, Wayne argued that Raygina's statement should be admitted as substantive evidence. On October 18, 2005, the PCRA court declined to admit Raygina's statement as substantive evidence and dismissed the matter without holding a hearing.

Wayne again appealed to the Pennsylvania Superior Court. *Commonwealth v. Thomas*, 908 A.2d 351 (Pa. Super. Ct. 2006) ("*Wayne-3*"). He raised four separate issues. First, Wayne asserted that the PCRA court had erred in failing to conduct a hearing on ineffective assistance of counsel with respect to the failure to investigate and

7

present testimony from Raygina. Second, Wayne contended that the PCRA court had erred in refusing to admit Raygina's declaration as substantive evidence. The third and fourth issues concerned the PCRA court's failure to hold an evidentiary hearing. The Superior Court rejected Wayne's arguments and affirmed. It held that Raygina's statement was inadmissible hearsay under Pennsylvania evidentiary rules and its admission was not required by due process. *Id.* at 355-56. The Superior Court also deemed the other issues waived because Wayne did not properly present argument on these discrete questions in accordance with Pennsylvania Rule of Appellate Procedure 2119(a). *Id.* at 353-54.

Wayne then filed the habeas petition in the Eastern District of Pennsylvania, raising, *inter alia*, the ineffective-assistance-of-counsel claims for failing to investigate Raygina and not following through with promises made in the opening statement about the testimony of Wayne and other witnesses. The District Court adopted the Magistrate Judge's Report and Recommendation that the habeas petition be dismissed and a certificate of appealability be denied. Wayne filed a notice of appeal.

We granted a certificate of appealability with respect to Wayne's claims that trial counsel rendered ineffective assistance by 1) failing to interview and present the testimony of Raygina Fearon, Diana Fearon and Dominique Long, and 2) promising during the opening statement to present certain evidence but then failing to do so.

## II.

Before reaching the merits of Wayne's ineffective assistance argument, we must address the threshold question of whether Wayne is procedurally barred from pursuing

8

his claims by virtue of state court rulings predicated upon Wayne's failure to comply with state court procedural requirements. A federal court may not grant a writ of habeas corpus unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, "the petitioner must fairly present all federal claims to the highest state court before bringing them in federal court." *Stevens v. Del. Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002) (internal quotation marks and citation omitted). Even when a petitioner asserts a claim in state court, however, a federal court may not review it on the merits where a state court's denial of relief rests on a violation of a state procedural rule, provided that the state rule "is independent of the federal question [presented] and adequate to support the judgment." *Nara v. Frank*, 488 F.3d 187, 199 (3d Cir. 2007) (citations omitted). The requirements of "independence" and "adequacy" are distinct. *See Johnson v. Pinchak*, 392 F.3d 551, 557-59 (3d Cir. 2004). State procedural grounds are not independent, and will not bar federal habeas relief, if the state law ground is so "interwoven with federal law" that it cannot be said to be independent of the merits of a petitioner's federal claims. *See Coleman v. Thompson*, 501 U.S. 722, 739-40 (1991).

A state rule is "adequate" for procedural default purposes if it was "firmly established, readily ascertainable, and regularly followed at the time of the purported default." *Szuchon v. Lehman*, 273 F.3d 299, 327 (3d Cir. 2001) (citations omitted). These requirements ensure that "federal review is not barred unless a habeas petitioner had fair notice of the need to follow the state procedural rule," *Bronshtein v. Horn*, 404 F.3d 700, 707 (3d Cir. 2005), and that "review is foreclosed by what may honestly be

9

called 'rules' . . . of general applicability[,] rather than by whim or prejudice against a claim or claimant." *Id*. at 708.

Because it is evident that Wayne's failure to comply with state law procedural requirements resulted in the Pennsylvania Superior Court deciding that Wayne had waived his ineffective-assistance-of-counsel claims based upon an alleged failure to investigate and an alleged failure to deliver promised testimony, we must determine whether adjudication of those claims on the merits is now foreclosed in this federal habeas corpus proceeding. Our consideration of this issue is plenary. *See Levya v. Williams*, 504 F.3d 357, 363 (3d Cir. 2007) (citation omitted).

In *Wayne-2*, the Pennsylvania Superior Court held that Wayne waived the claim that trial counsel provided ineffective assistance by breaking his promise to provide evidence of Wayne's innocence because Wayne had failed to argue the claim separately in his first counseled PCRA petition. Instead, Wayne embedded this argument within the larger ineffective assistance claim as it related to counsel's failure to interview known eyewitnesses. Pennsylvania procedural rules make clear that arguments not explicitly raised in the PCRA petition are waived. *See* Pa. R. Crim. P. 902(B) ("Each ground relied upon in support of the relief requested shall be stated in the [PCRA] petition. Failure to state such a ground in the [PCRA] petition shall preclude the defendant from raising that ground in any proceeding for post-conviction collateral relief."); Pa. R. App. P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Accordingly, Pennsylvania courts routinely decline to consider on appeal an

10

argument that was not explicitly raised in the PCRA petition. *See, e.g.*, *Commonwealth v. Edmiston*, 851 A.2d 883, 889 (Pa. 2004) (citations omitted) (stating that "[c]laims not raised in the PCRA court are waived and cannot be raised for the first time on appeal"); *Commonwealth v. Bond*, 819 A.2d 33, 39 (Pa. 2002) (citations omitted) (finding appellant's claims were "separately and independently waived because, as appellant admit[ed], he failed to raise them in the PCRA court"); *Commonwealth v. Bracey*, 795 A.2d 935, 940 n.4 (Pa. 2001) (citation omitted) (declining to consider on appeal an issue that was not properly presented in the post-conviction petition). Relying on *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 114 (Pa. 1998), the Superior Court observed in *Wayne-2* that trial counsel's failure to present evidence promised in the opening statement was mentioned in the PCRA petition "only as a constituent element of a broader claim concerning counsel's failure to investigate and present exculpatory eyewitness testimony." (A. 587.) Wayne's failure to raise and argue this issue discretely before the PCRA court precluded him from raising it subsequently on appeal before the Pennsylvania Superior Court. Consequently, the claim was dismissed on procedural grounds and not considered on the merits.

In the federal habeas proceeding, the District Court concluded that the Superior Court's waiver ruling constituted an independent and adequate state ground for denying habeas relief. We agree with the District Court's comprehensive analysis. Wayne's ineffective assistance claim based on trial counsel's failure to present evidence that was promised during opening statements is procedurally defaulted because Wayne did not comply with the clear and unambiguous Pennsylvania rules that require each claim to be

11

separately and explicitly asserted in the PCRA petition. *See* Pa. R. Crim. P. 902(B); Pa. R. App. P. 302(a).

B.

For similar reasons, Wayne is also barred from raising the ineffective assistance claim as it relates to the failure to investigate known eyewitnesses. The Pennsylvania Superior Court in *Wayne-2* remanded the matter for an evidentiary hearing predicated entirely on the prospect of Raygina's potential testimony.[7] Raygina's death nullified the sole basis for granting the hearing. Accordingly, Wayne asked the PCRA court to postpone the evidentiary hearing and then submitted a memorandum of law regarding the admissibility of Raygina's statement as substantive evidence. The PCRA court subsequently denied Wayne's request to admit Raygina's declaration as substantive evidence and dismissed the petition without holding an evidentiary hearing. Wayne appealed this decision to the Pennsylvania Superior Court (*Wayne-3*).

---

[7] *Wayne-2* did not remand for an evidentiary hearing to investigate the representations made by Diana Fearon and Dominique Long because their statements were explicitly excluded from consideration for failing to adhere to the PCRA affidavit requirement. In an ineffective assistance claim for failing to interview a witness, Pennsylvania requires a valid affidavit and "will not grant relief based on an allegation that a certain witness may have testified in the absence of an affidavit from that witness to show that the witness would, in fact, testify." *Commonwealth v. Khalil*, 806 A.2d 415, 422-23 (Pa. Super. Ct. 2002) (citation omitted). Pennsylvania's "affidavit rule" was firmly established in *Khalil*, which was issued on August 2, 2002. *Id.* Wayne filed his appellate brief with the Pennsylvania Superior Court in *Wayne-2* on April 7, 2003, approximately eight months after the *Khalil* decision. Therefore, Wayne had proper notice of Pennsylvania's "affidavit rule." Accordingly, Diane Fearon and Dominique Long's statements were procedurally barred based on firmly established Pennsylvania law.

12

In his submission to the Pennsylvania Superior Court in *Wayne-3*, Wayne's one argument section was devoted entirely to the admissibility of Raygina's hearsay statement. Wayne's other arguments – including the ineffective-assistance-of-counsel claim for failure to investigate Raygina – were not properly "followed by such discussion and citation of authorities as are deemed pertinent." *Thomas*, 908 A.2d at 353 (quoting Pa. R. App. P. 2119(a)). Thus, Wayne did not set forth counsel's alleged ineffectiveness as a stand-alone basis for relief. The Superior Court dismissed this ineffective assistance claim because it did not comply with Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure. *See* Pa. R. App. P. 2119(a) (stating that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent"); *see also Berg v. Georgetown Builders, Inc.*, 822 A.2d 810, 815 (Pa. Super. Ct. 2003) (citation omitted) (failing to comply with the mandate of Rule 2119(a) results in a waiver of issues); *Boutte v. Seitchik*, 719 A.2d 319, 326 n.7 (Pa. Super. Ct. 1998) (stating that improperly commingling a claim in an argument pertaining to an appellant's other issues on appeal violates Rule 2119(a)); *Estate of Lakatosh*, 656 A.2d 1378, 1381 n.2 (Pa. Super. Ct. 1995) (finding the appellant's "brief violate[d] Rule 2119(a) because it [was] not divided into as many parts as there [were] questions to be argued, nor [was] the particular point to be addressed set out at the head of each part in distinctive type or distinctively displayed").

13

Wayne's ineffective-assistance-of-counsel claim as it relates to the failure to investigate Raygina is barred from habeas review on adequate and independent state law grounds because Wayne did not comply with Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure.

C.

Thus, both of Wayne's ineffective assistance claims were defaulted in successive proceedings because Wayne did not comply with clearly established Pennsylvania procedural rules. We may excuse Wayne's procedural defaults only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000) (citation omitted). To establish cause and prejudice, Wayne "must demonstrate some objective factor external to the defense that prevented compliance with the state's procedural requirements." *Cristin v. Brennan*, 281 F.3d 404, 412 (3d Cir. 2002) (citation omitted).

Both of Wayne's claims were barred on procedural grounds because of his failure to comply with Pennsylvania procedural requirements. Raygina's death did not, and could not, cause Wayne to violate the applicable Pennsylvania rules of procedure. *See Murray v. Carrier*, 477 U.S. 478, 488-90 (1986) (explaining that counsel's ignorance or inadvertence is not "cause" and the petitioner must bear the risk of attorney error).

To establish a "fundamental miscarriage of justice," Wayne must show "actual innocence." *Cristin*, 281 F.3d at 420 (citation omitted). A habeas petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (citation omitted); *see also*

14

*Sweger v. Chesney*, 294 F.3d 506, 523 (3d Cir. 2002) (stating that "[n]ew reliable evidence is almost always required to establish actual innocence"). New reliable evidence could consist of "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Sweger*, 294 F.3d at 523 (citations omitted). Raygina's hearsay declaration falls short of this standard and Wayne cannot establish actual innocence based on the hearsay evidence of a deceased witness alone.

D.

In the absence of Raygina's anticipated testimony, there was no direct evidentiary support for the failure to investigate claim. Thus, we directed the parties to address the question of whether the Pennsylvania Superior Court's ruling barring Raygina's declaration constitutes an "adequate and independent" state-law ground for denying the claim.[8] We hold that the decision to deny admission of Raygina's hearsay declaration is an "adequate and independent" state-law ground for denying the claim and is not eligible

---

[8] We also directed the parties to address whether Wayne "failed," by reason of waiver or otherwise, to develop the factual basis for the failure to investigate claim in state court, such that the District Court was precluded from holding an evidentiary hearing on the issue. *See* 28 U.S.C. § 2254(e)(2). The decision to grant an evidentiary hearing is left to the sound discretion of district courts. *See Goldblum v. Klem*, 510 F.3d 204, 220-221 (3d Cir. 2007) (citations omitted). Accordingly, district courts "focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000). A hearing on Wayne's claim would not be meaningful because there is no direct evidence to advance his position in the absence of Raygina's testimony. Therefore, the District Court acted well within its discretion when it denied Wayne's request for a hearing.

for federal habeas review because it does not rise to the level of constitutional error. *See, e.g.*, *Bisaccia v. Att'y Gen. of N. J.*, 623 F.2d 307, 312 (3d Cir. 1980).

Wayne also presented the denial of the hearsay declaration as a due process violation based on *Chambers v. Mississippi*, 410 U.S. 284 (1973), and its statement that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Id*. at 302. *Chambers* is readily distinguishable. Raygina's declaration was inadmissible based on traditional concerns associated with hearsay evidence. Raygina's death made her "unavailable" under Rule 804(a)(4) of the Pennsylvania Rules of Evidence, and her statement did not bear "adequate indicia of reliability, such as when the statement falls within a firmly rooted hearsay exception or is supported by a particularized guarantee of trustworthiness." *Thomas*, 908 A.2d at 354 (internal quotation marks and citation omitted). The Superior Court noted that "if the Declaration was admitted as substantive evidence, the Commonwealth would not have the opportunity to test [Raygina's] eyewitness account of the incident and her identification of the man who murdered the victim as not being [Wayne] on cross-examination." *Id.* at 355. (citation omitted). Moreover, even though the statement was signed subject to the penalty of perjury, it did not qualify as an affidavit because Raygina "did not swear her statements before an officer authorized to administer oaths." *Id.* at 354 (citations omitted). As the Superior Court observed, "the statement of a witness taken by the defense under circumstances privy only to the defense does not establish the requisite trustworthiness that is necessary for admissibility." *Id*. (citation omitted). In sum, the Pennsylvania Superior Court's

16

sound reasoning for denying the hearsay declaration is in no way contrary to or an unreasonable application of *Chambers*.

IV.

For the foregoing reasons, we will affirm the District Court's decision to deny Wayne's habeas petition.

17